MENORAH HOME AND HOSPITAL FOR the AGED AND INFIRM, INC., and Menorah Nursing Home, Inc., Petitioners,

v.

LOCAL 144, HOTEL, HOSPITAL, NURSING HOME & ALLIED HEALTH SERVICES UNION, AFL–CIO, Respondent.

No. 83 CIV 2479.

United States District Court, E.D. New York.

Oct. 3, 1983.

Laurence P. Brown, New York City, for petitioners.

Vladeck, Waldman, Elias & Englehard, P.C., New York City (Sarah E. Siskind, New York City, of counsel), for respondent.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Petitioners, Menorah Home and Hospital for the Aged and Infirm, Inc. (the "Home") and Menorah Nursing Home, Inc. ("M.N.H."), bring this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* They seek to permanently stay an arbitration proceeding. Respondent, Local 144, Hotel, Hospital, Nursing Home & Allied Health Services Union, AFL–CIO ("Local 144" or the "Union"), has filed a cross-motion to compel arbitration under 9 U.S.C. § 4. While petitioners' motion for a stay comes as a request for a preliminary injunction, the parties have agreed to consolidate the hearing on the preliminary injunction with a hearing on the merits. *See* Fed.R.Civ.P. 65(a)(2). In addition, the parties have stipulated to a resolution of this matter without sworn testimony.

### FACTS

The Home and M.N.H., two separate not-for-profit corporations, are nursing homes located in Brooklyn, New York. They provide health and residential care for the aged and infirm. The Home was in existence many years before M.N.H., which opened on June 28, 1982, and reached full operation by December, 1982. The employees of M.N.H. are a combination of persons newly hired and transferees from the Home.

On June 30, 1982, the collective bargaining agreement between Local 144 and the Home expired. While that agreement was being negotiated, discussions were also go-

ing on for the initial collective bargaining agreement between Local 144 and M.N.H.

The negotiations proceeded on two levels. First, since Menorah is a member, along with several other hospitals, of the multi-employer League of Voluntary Hospitals (the "League"), "general" issues that were common to all the hospitals comprised part of the multi-employer negotiations between the League (acting on behalf of Menorah) and Local 144. Second, Menorah and Local 144 negotiated other "local" issues that were peculiar to Local 144 and the two facilities operated by Menorah.

On December 10, 1982, the League and Local 144 reached an agreement on the "general" issues, and they embodied it in a stipulation. Petition To Stay Arbitration, Exhibit D. The stipulation provides, *inter alia*, that "[t]he collective bargaining agreements between Local 144 and the League members covered by this agreement are extended and renewed for the period up through November 30, 1984 with the modification hereinafter set forth." This language, then, revived the general collective bargaining agreement that had expired on June 30, 1982. The stipulation contains the following language:

> Local and specialty issues taken up by the Union and the respective members of the League during the course of the negotiations leading up to this Agreement but not resolved, shall continue to be taken up by the respective Union committees and League members for a period of 45 days from the date hereof. If not resolved within such period, these issues shall not be subject to grievance and arbitration procedures, but the Union shall have the right to strike any League member with which a dispute remains within a reasonable period of time (not to exceed 45 days), on such notice as is required by law.

Petition To Stay Arbitration, Exhibit D, para. 8.

On December 29, 1982, Local 144 and the petitioners reached a tentative agreement on various "local" issues. In addition to providing that the new collective bargaining agreement (as extended and modified by the December 10, 1982 stipulation) would cover both the Home and M.N.H., the draft of the December 29, 1982 agreement on "local" issues provided as follows:

> Separate seniority lists shall be maintained for each department at each location. In the event that the employee is transferred from the 871 Bushwick Avenue facility to the Oriental Blvd. facility or vice versa, said employee shall carry with him his seniority to the new location. Regardless of the above, if an employee is transferred from one location to the other at the request of the employer, said employee shall have the right to transfer back and bump employees in the original situs of his employment where he is subject to a lay-off at his new facility.

Petition To Stay Arbitration, Exhibit E.

On January 10, 1983, Menorah's attorney, Richard A. Wilsker, sent to Frank Russo, Vice-President of Local 144, an unexecuted draft of the December 29, 1982 tentative agreement on "local" issues. Russo, however, refused to execute the agreement and, as a result, Menorah appealed to the National Labor Relations Board ("NLRB"), charging that the Union had violated Section 8 of the National Labor Relations Act. Case No. 29–CB–5329. Specifically, Menorah charged that the Union unlawfully refused to execute the stipulation of settlement of "Local Issues" under the Master Agreement between the Union and the League. Finding that Menorah had failed to inform the Union of impending layoffs until after the parties had reached the oral agreement regarding separate seniority lists, the Regional Director of the NLRB ruled that the Union's conduct in refusing to execute the agreement on local issues was not unlawful. Letter Of Samuel M. Kaynard, Regional Director, NLRB, at p. 2 (August 4, 1983).

The "layoffs" referred to by the Regional Director were occasioned by a 50% reduction in patient occupancy at the Home. As previously mentioned, when Russo learned of this substantial layoff, he refus-

ed to execute the Agreement on Local Issues which would have established separate seniority lists for Menorah's two facilities. Instead, Russo sought to continue negotiations on the issue of local seniority arrangements. The Regional Director of the NLRB, however, concluded that Menorah would not negotiate further and he indicated that the Union should therefore seek arbitration of this matter.

The Union sought arbitration on the separate issues (1) whether the layoffs at the Home were improper, and (2) whether petitioners were obligated to lay off part-time employees instead of full-time employees.

On February 15, 1983, the arbitration hearing on the layoff issue was scheduled before arbitrator Ralph Berger. A.A.A. Case No. 1330–0196–83. Instead of proceeding with the hearing, however, the parties entered a written agreement, dated that day, to negotiate further the layoff issue. The stipulation provided, *inter alia,* that:

1. The second 45 day period under the December 10, 1982 Agreement between the League of Voluntary Hospitals and the Union, during which the Union has the right to strike over local issues, is extended until March 14, 1983 to allow the Union and the Employer to attempt to negotiate a resolution of the instant dispute (Case No. 1330–0196–83);

2. The arbitrator, Ralph Berger, will retain jurisdiction over the dispute and in the event that the parties do not resolve the matter through negotiations, they may, by mutual agreement, on or before March 14, resubmit the matter to arbitration before Mr. Berger.

. . . . .

4. Should the parties fail to reach agreement on the layoff issue, and should they not agree to resubmit the matter to arbitration, then the Union shall have the right to strike the Employer, on or before March 14, 1983.

Petition To Stay Arbitration, Exhibit F.

On March 9, 1983, the separate dispute concerning the layoff of part-time employ-ees was scheduled for a hearing. A.A.A. Case No. 1330–0197–83. Again, however, the parties executed another stipulation consolidating the layoff grievance with the part-time employees, and subjecting both controversies to the terms and conditions of the February 15, 1983 stipulation.

The parties were unable to negotiate a settlement of the two grievances by March 14, 1983, the strike deadline established in the February 15, 1983 stipulation. Neither had they agreed to resubmit the issues to arbitration. Thus, they were at the Rubicon. Someone had to move.

The Union tried to resubmit both disputes to arbitration on March 16, 1983. The Union's letter to the American Arbitration Association reads as follows:

> By stipulations executed by the parties on February 15, 1983 and March 9, 1983, it was agreed that the above cases were consolidated before Ralph Berger but that on or before March 14, 1983 neither party could unilaterally resubmit the matter to Mr. Berger.
>
> Inasmuch as this date has passed, Local 144 hereby exercises its contractual right to arbitrate the above matters, and requests that you reschedule them for hearing at the earliest possible date.

Petition To Stay Arbitration, Exhibit I.

Menorah disagreed with the Union's interpretation of the February 15, and March 9, 1983 stipulations, arguing that unilateral resubmission by the Union violated the terms of those stipulations.

The arbitrator, Mr. Berger, agreed with Menorah's interpretation of the stipulations, and, on April 12, 1983, he ruled that because the parties had not mutually agreed to resubmit the issues to arbitration on or before March 14, 1983 he had "apparently lost jurisdiction to hear this case." Petition to Stay Arbitration, Exhibit J.

A week later, the Union tried again to submit the two grievances to arbitration. The Union's Letter to the American Arbitration Association, dated April 21, 1983, *inter alia,* states as follows:

Now that the proceeding before Arbitrator Ralph Berger has been closed, we request that new panels for selection of another arbitrator to hear the disputes be issued at the earliest possible date.

Petition To Stay Arbitration, Exhibit K.

Menorah opposed the resubmission; but the A.A.A. processed the resubmission, consolidated the two disputes, and assigned a new case number. A.A.A. Case No. 1330–0614–83. Menorah then filed the instant action, seeking a permanent stay of arbitration.

## THE ISSUES

Menorah makes three arguments to stay arbitration: (a) there was no agreement to arbitrate when these disputes arose; (b) assuming *arguendo* that a general agreement to arbitrate was in existence, the parties expressly agreed not to arbitrate the present disputes; and (c) since an arbitrator has already determined that, based upon the lack of an agreement to arbitrate, he had no jurisdiction to hear the disputes, Local 144 should be estopped from resubmitting these disputes for arbitration.

The Union argues that the arbitration clause in the League's collective bargaining agreement governing general issues, which was admittedly in effect on December 10, 1982, applies to the instant dispute.

Article VII of the League Collective Bargaining Agreement provides for arbitration in the event of "any grievance," and "grievance" is defined as "a dispute concerning the interpretation, application or claimed violation of the specific provisions of this Agreement." One of the "specific provisions" of the Collective Bargaining Agreement is Article XXI, entitled "Seniority." It provides, *inter alia,* that:

(a) After the completion of the probationary period, an employee shall attain seniority as of the most recent date of employment. Seniority shall be measured on the basis of continuous employment in the Home, and for the purpose of this Agreement seniority lists shall be maintained for each department, and for part-time employees and departmental seniority shall prevail in the event of layoff and rehiring of employees.

(b) Notwithstanding the foregoing, an employee subject to layoff may claim the work of a less-senior employee in another department, provided in the Home's opinion that the employee shall be able to do the work claimed. In the event that work again becomes available in the claiming employee's department, such employee shall be reassigned to such work in accordance with departmental seniority.

Petition To Stay Arbitration, Exhibit B. Thus, the League Collective Bargaining Agreement would appear to address *interdepartmental* "bumping rights" only within a *single* facility.

Menorah notes that the instant dispute centers upon *inter-facility* bumping rights, as opposed to *inter-departmental* bumping rights within the same facility. It further contends that these issues are by nature "local" and, as such, are governed by Paragraph 8 of the December 10, 1982 stipulation providing that local issues "shall not be subject to grievance and arbitration procedures." The Union counters that the characterization of a dispute as either general or local is for the arbitrator to make.

## THE LAW

It is, of course, axiomatic that "[t]here is no general duty to submit labor disputes to arbitration." *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, International Brotherhood of Teamsters,* 605 F.2d 1290, 1294 (2d Cir. 1979). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962).

Congress has commissioned the courts to determine "whether the reluctant party has

**912**

breached his promise to arbitrate." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1352. Nevertheless,

> the judicial inquiry under § 301 [of the Labor-Management Relations Act] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* The Supreme Court's presumption of arbitrability rests upon the strong national policy favoring arbitration of labor disputes. Thus, arbitration clauses are given a liberal construction, especially "when a party asserts that a particular type of claim falls outside the scope of [that] clause." *Rochdale Village, Inc. v. Public Service Employees*, 605 F.2d at 1295.

■ "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581, 80 S.Ct. at 1352. Nevertheless, if the parties agree to submit certain disputes to arbitration only upon mutual consent, "courts are powerless, absent such consent, to compel arbitration." *Gangemi v. General Electric Co.*, 532 F.2d 861, 866 (2d Cir.1976). Moreover, while a provision excluding a particular dispute from arbitration must be "clear and unambiguous" it is not required "that a court adopt an unreasonable construction of a contract provision in order to find that a dispute is arbitrable." *Id.*

In this case, no one disputes that the Master Collective Bargaining Agreement, which was negotiated by the League of Voluntary Hospitals on behalf of Menorah and which was in effect at the time this dispute arose, contains a broad arbitration clause. However, the stipulation executed by the parties on December 10, 1982 which, in effect, renewed the League Collective Bargaining Agreement also narrowed the compass of its arbitration clause. In Paragraph 8 of the December 10, 1982 stipulation, the parties, by mutual agreement, removed the negotiation of local issue from the arbitral forum. Documents submitted by Local 144 at oral argument make it clear beyond cavil that the parties at all times treated negotiations pertaining to the maintenance of separate seniority lists at Menorah's two facilities as a local matter. *See* Letter of Samuel M. Kaynard, Regional Director, NLRB (August 4, 1983).

■ Having pored over the numerous stipulations and agreements—not all of which are paragons of plain English—I am constrained to conclude that the language contained in Paragraph 8 of the December 10, 1982 stipulation does constitute "clear and convincing" evidence of the parties' mutual intent to *exclude* local issues from arbitration. Moreover, the February 15, 1983 stipulation, which was drafted by the Union's own counsel, does not obligate anyone to anything. It merely provides that "in the event that the parties do not resolve the matter through negotiation, they may by mutual agreement, on or before March 14, resubmit the matter to arbitration...." Petition to Stay Arbitration, Exhibit F, at p. 2.

Thus, in the absence of any stipulation which might arguably supersede the express ban against arbitration of local issues contained in Paragraph 8 of the December 10, 1982 stipulation, that Paragraph must control. Because the parties, at all stages of their negotiations, have chosen to treat Menorah's proposed maintenance of separate seniority lists for its two facilities as a "local issue," the matter must perforce fall within the ambit of Paragraph 8 of the December 10, 1982 stipulation. I am compelled to interpret these documents as the parties wrote them.

Accordingly, petitioners' motion to permanently stay arbitration in American Ar-

bitration Association Case No. 1330–0614–83 is granted. Respondent's cross-motion to compel is dismissed.

SO ORDERED.